Henry MAAS, Plaintiff and Respondent,

v.

Kenneth J. ALLRED, Utah Bank &
Trust and Arvel Allred, Defendants
and Appellants.

No. 14808.

Supreme Court of Utah.

March 22, 1978.

John G. McAllister, Michael R. Carlston, Salt Lake City, Layne B. Forbes, Bountiful, Kenneth G. Anderton, Vernal, for defendants and appellants.

James L. Wilde and Paul S. Felt, of Ray, Quinney & Nebeker, Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Defendant Utah Bank & Trust (hereafter defendant) appeals from a $14,839.31 judgment against it in an action for the wrongful repossession and commercially unreasonable sale of a 1972 Mack tractor. The defendant contends that there is an inconsistency in the special verdicts which requires remand or reversal of the judgment.

On November 11, 1971, Kenneth Allred executed a promissory note and security agreement in favor of defendant in consideration for a loan with which he purchased a Mack tractor. Approximately one year later Kenneth Allred leased the tractor to plaintiff for 36 months with the option to purchase it at the end of the lease period for $3,500.00.

Plaintiff made 26 payments directly to defendant, all of which were late. As of February 1975, plaintiff was two months behind in the payments. One of defendant's loan officers, Kotter, told plaintiff that the matter must be resolved by the end of February. On February 14, Kenneth Allred removed the tractor from a parking lot without plaintiff's knowledge. He later agreed to return the tractor to plaintiff on the condition that all future payments to defendant would be made in a timely manner. On February 25, defendant repossessed the tractor before Allred returned it to plaintiff.

Plaintiff contacted Kotter, who told him defendant would keep the tractor until the payments were made. On February 28, plaintiff offered to make the payments but Kotter told him that the vehicle had been sold. That sale occurred as follows: sometime between February 25th and plaintiff's offer on February 28th, the defendant received a check from Kenneth Allred's father, Arvel Allred, for $4,346.38, the balance owing on the promissory note; thereafter the defendant released its lien on the tractor, and turned it over to Kenneth Allred.

The case was submitted to the jury on 12 special interrogatories. Those pertinent to this appeal and underlined answers thereto are as follows:

Proposition No. 6: The disposition of the 1972 Mack Tractor on February 27th

or 28th by the Utah Bank & Trust Company was a commercially unreasonable disposition of the tractor. *True.*

Proposition No. 7: The Utah Bank & Trust Company by its acts and conduct, through its employees and officers, waived payment of the three payments due on the promissory note until the end of business hours of the bank on February 28, 1975. *True.*

Proposition No. 8: The Fair Market Value of the Mack Tractor on the 25th of February, 1975, was in the sum of $20,-500.00

Proposition No. 9: The defendant, Utah Bank & Trust Company, wrongfully converted the 1972 Mack Tractor on February 25, 1975. *False.*

The District Court granted judgment against the defendant in the amount of $14,839.31, the amount of plaintiff's equity in the tractor, and a judgment of no cause of action in favor of the individual defendants, Arvel and Kenneth Allred.

Defendant contends on appeal that: 1) Interrogatory No. 7, a finding of a waiver of the late payments, and Interrogatory No. 9, a finding of no conversion of the tractor by the defendant are inconsistent and therefore should be disregarded and the case remanded for a new trial; or 2) Interrogatories Nos. 7 and 9 can be reconciled if the court holds that a finding of waiver of payments does not compel a conclusion that the defendant converted the tractor in which event the judgment against the defendant should be reversed.

The District Court instructed the jury that even if the defendant had a right to repossess the tractor, it had the further duty to sell the truck in a commercially reasonable sale.[1] This instruction listed the requirements of a commercially reasonable sale as follows:

1) The defendant must have given notice of the sale "to all persons having any rights or interest in the truck" and 2) the defendant must have exercised "due diligence in

attempting to get the best price obtainable for the truck" e. g. solicit bidders and advertise the sale.

The Court further instructed the jury that if it found that the lease option between Allred and plaintiff, noted ante, constituted a contract of sale then the plaintiff should be regarded as having rights and interest in the truck, which would entitle plaintiff to notice by defendant.

After being so instructed, the jury found that the defendant's disposition of the tractor was commercially unreasonable. This finding alone is a sufficient basis to sustain the judgment against the defendant,[2] and other matters of alleged error need not be discussed.

Affirmed. Costs to plaintiff.

MAUGHAN and HALL, JJ., concur.

ELLETT, Chief Justice (dissenting):

I am unable to concur in the prevailing decision. The facts of this case are simple and not disputed. They are as follows:

1. Kenneth J. Allred borrowed money from the defendant bank which he used to buy a truck. He gave a note to the bank and a lien on the truck as security therefor.

2. After approximately one year, Allred leased the truck to Maas with the understanding that Maas would make the payments due by Allred to the bank as they became due; and when the bank was fully paid, Allred would give the truck to Maas if he would pay an additional $3,500.00 to Allred.

3. Maas did pay the bank twenty-six monthly payments, most of which were past due when paid.

4. In February, 1975, the bank, tired of trying to collect payments on time, informed Allred that repossession was contemplated.

5. Allred took possession of the truck on February 14, 1975. Thereafter, Maas asked if the bank had repossessed the truck and was told it had not. He was further told

---

[1]. See Utah Code Ann., 1953, Sec. 70A–9–504.

[2]. Utah Code Ann., 1953, Sec. 70A–9–507.

that the matter would have to be cleared up by the end of February. Maas was also told that the bank had nothing to do with the repossession.

6. On February 25, 1975, Allred called the bank and stated that he and Maas had arrived at a settlement of their differences and that he was releasing the truck back to Maas. The bank informed Allred that since there were three payments past due and since the bank did not know how to contact Mr. Maas, it wanted to repossess the truck

7. At that time Allred signed an Acknowledgement of Default.

8. Maas then called the bank and stated that he wanted the truck and would bring the payments current. The bank told him they would hold the truck until the payments were made.

9. On February 26, 1975, Allred's father paid the balance due on the truck and the bank's interest in the matter was thereby ended.

10. On February 28, 1975, Mr. Maas came to the bank and stated that he wanted to pay the delinquent installments but was told by the bank that the entire balance had been paid off.

11. On March 1, 1975, the bank released its lien to Allred who then placed title in the name of his father.

Mr. Maas claims that the bank sold the truck for some $4,346.38 when it was worth $20,000.00 and did so without giving notice to him. The trial court and the main opinion herein seem to agree. It is here that I part company with them for there was no sale of anything.

The only interest the bank had in the matter was to get paid for the loan it had made to Allred; and when that loan was paid off, the bank had no further concern in the matter. It made no difference to the bank who actually paid the money and it did not sell anything. It simply released its lien, and by doing that which it was obligated by law to do, it did not have any effect on the contract of lease by and between Allred and Maas. It did not cause any damage to Maas at all. In fact, the bank

and Maas had no contractual arrangements between them whatsoever. The only relationship that existed between them was that the bank received money from Maas which was paid for and on behalf of Allred. I am unable to see any basis for the judgment rendered in favor of Maas and against the bank.

I would reverse the judgment and award costs to the bank.

CROCKETT, J., concurs in the views expressed in the dissenting opinion of ELLETT, C. J.